**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* DEBBIE BURKE,<br><br>Plaintiff,<br><br>v.<br><br>ST. JUDE MEDICAL, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL NO. SAG-16-3611** |

**...oOo...**

**UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION TO RELATOR'S MOTION FOR AWARD OF RELATOR'S SHARE**

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................ **1**

**BACKGROUND** ........................................................ **2**

A. The False Claims Act ........................................................ 2

B. Procedural History ........................................................ 4

C. Factual Background ........................................................ 5

D. The Settlement Agreement ........................................................ 5

**ARGUMENT** ........................................................ **6**

I. Congress enacted the public disclosure bar to prevent "parasitic" relators who merely regurgitate public information in a complaint while contributing little additional information. ........................................................ 6

II. The allegations in the relator's complaint are "substantially the same" as publicly disclosed information. ........................................................ 9

A. The allegations or transactions were publicly disclosed in the "news media" and in "Federal reports." ........................................................ 11

i. The "news media" ........................................................ 11

ii. "Federal reports" ........................................................ 15

B. The relator's allegations are substantially the same as publicly disclosed information in the news media and in Federal reports. ...... 16

1. Allegation 1: St. Jude "knew" that the devices suffered from a defect that could cause premature battery depletion. ............ 16

2. Allegation 2: St. Jude took corrective action in 2015. ............ 18

3. Allegation 3: St. Jude continued to "promote, market, and sell" the older devices even after making the manufacturing change. ........................................................ 18

4. Allegation 4: St. Jude did not notify healthcare providers of the problem until the recall in October 2016. ........................ 20

5. Allegation 5: It was "reasonably foreseeable" that Medicare paid for the implantation of some of the defective devices. ... 21

III. The relator is not an "original source" of the information. ..............................21

A. The original source rule requires that relators possess significant information that is *both* "independent of" and "materially adds to" the public disclosures. ..............................21

B. The relator is not an original source because she has no independent information other than having received a device, which does not "materially add" to the public information. ..............................26

C. Relator cannot avoid the public disclosure bar by claiming her complaint was a "catalyst" for the Government's investigation and ultimate settlement. ..............................29

IV. Even if the relator is entitled to a share—which she is not—the applicable share range is 0-10%, and within that range the appropriate award is at the bottom...30

**CONCLUSION .............................................................................................. 34**

## TABLE OF AUTHORITIES

**Cases**

*A1 Procurement, LLC v. Thermor, Inc.*
2017 U.S. Dist. LEXIS 105343 (E.D. Va. Apr. 4, 2017) .......... 15

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*
532 U.S. 598 (2001).......... 30

*Citynet, LLC v. Frontier W. Va. Inc.*
2018 U.S. Dist. LEXIS 55049 (W.D. Va. Mar. 30, 2018).......... 11

*Fed. Recovery Servs., Inc. v. United States*
72 F.3d 447 (5th Cir. 1995) .......... 31

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*
559 U.S. 280 (2010).......... 7, 10

*Schindler Elevator Corp. v. United States ex rel. Kirk*
563 U.S. 401 (2011).......... 6, 11, 15, 28

*United States ex rel. Ahumada v. NISH*
756 F.3d 268 (4th Cir. 2014) .......... 10

*United States ex rel. Allen v. Guidant Corp. et al.*
2012 U.S. Dist. LEXIS 34192 (D. Minn. Mar. 14, 2012) .......... 25

*United States ex rel. Amico*
2015 U.S. Dist. LEXIS 195814 (S.D.N.Y. June 8, 2015) .......... 22

*United States ex rel. Bannon v. Edgewater Med. Ctr.*
406 F. Supp. 2d 907 (N.D. Ill. Nov. 28, 2005) .......... 12

*United States ex rel. Barth v. Ridgedale Elec., Inc.*
44 F.3d 699 (8th Cir. 1995) .......... 7, 23

*United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.*
161 F.3d 533 (9th Cir. 1998) .......... 12

*United States ex rel. Black v. Health & Hosp. Corp.*
494 Fed. Appx. 285 (4th Cir. 2012).......... 10, 22

*United States ex rel. Colquitt v. Abbott Labs*
864 F. Supp. 2d 499 (N.D. Tex. 2012) .......... 13

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*
2014 U.S. Dist. LEXIS 123182 (E.D. Pa. Sept. 4, 2014) ..................................... 14, 16

*United States ex rel. Davis v. Prince*
753 F. Supp. 2d 569 (E.D. Va. 2011) ............................................................... 9

*United States ex rel. Doe v. Stanford Healthcare Billing Dep't*
2020 U.S. Dist. LEXIS 40906 (C.D. Cal. Feb. 4, 2020).................................. 24, 25, 27

*United States ex rel. Doe v. Staples, Inc.*
932 F. Supp. 2d 34 (D.D.C. Mar. 25, 2013) ........................................................ 12

*United States ex rel. Fadlalla v. DynCorp Int'l, LLC*
402 F. Supp. 3d 162 (D. Md. 2019)................................................................... 22

*United States ex rel. Feingold v. AdminaStar Fed., Inc.*
324 F.3d 492 (7th Cir. 2003) ............................................................................. 7

*United States ex rel. Findley v. FPC-Boron Employees' Club*
105 F.3d 675 (D.C. Cir. 1997)........................................................................... 29

*United States ex rel. Foreman v. AECOM*
454 F. Supp. 3d 254 (S.D.N.Y. 2020) ................................................................ 11

*United States ex rel. Fried v. W. Indep. Sch. Dist.*
527 F.3d 439 (5th Cir. 2008) ............................................................................. 10

*United States ex rel. Fryberger v. Kiewit Pac. Co.*
2013 U.S. Dist. LEXIS 153135 (N.D. Cal. Oct. 23, 2013)........................................ 12

*United States ex rel. Gear v. Emergency Med. Assocs., Inc.*
2005 U.S. Dist. LEXIS 7971 (N.D. Ill. Apr. 13, 2005) ............................................ 12

*United States ex rel. Hastings v. Wells Fargo Bank, N.A.*
2014 U.S. Dist. Lexis 96864 (C.D. Cal. July 25, 2014) ..................................... 14, 20

*United States ex rel. Hastings v. Wells Fargo Bank, NA*
656 Fed. Appx. 328 (9th Cir. 2016)................................................................... 22

*United States ex rel. Hays v. Hoffman*
325 F.3d 982 (8th Cir. 2003) ............................................................................. 29

*United States ex rel. Heron v. Nationstar Mortg., LLC*
2021 U.S. Dist. LEXIS 175182 (D. Colo. Sept. 15, 2021).................................. 10, 11

*United States ex rel. Hirt v. Walgreen Co.*
2016 U.S. Dist. LEXIS 25859 (M.D. Tenn. Mar. 2, 2016) ....................................... 12

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*
498 F. Supp. 2d 25 (D.D.C. 2007) .......... 10, 19

*United States ex rel. Hong v. Newport Sensors, Inc.*
2016 U.S. Dist. LEXIS 188295 (C.D. Cal. May 19, 2016) .......... 14

*United States ex rel. JDJ & Assocs., LLP v. Natixis*
2017 U.S. Dist. LEXIS 164106 (S.D.N.Y. Sept. 29, 2017) .......... 23

*United States ex rel. Jones v. Sutter Health*
499 F. Supp. 3d 704 (N.D. Cal. 2020) .......... 22, 25

*United States ex rel. Ketroser v. Mayo Found.*
2011 U.S. Dist. LEXIS 80385 (D. Minn. July 22, 2011) .......... 23

*United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*
985 F.2d 1148 (2d Cir. 1993) .......... 23

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs.*
149 F.3d 227 (3d Cir. 1998) .......... 6

*United States ex rel. May v. Purdue Pharma, LLP*
737 F.3d 908 (4th Cir. 2013) .......... 8

*United States ex rel. Merena v. SmithKline Beecham Corp.*
205 F.3d 97 (3d Cir. 2000). .......... 4, 9, 31

*United States ex rel. Montgomery v. St. Edward Mercy Med. Ctr.*
2007 U.S. Dist. LEXIS 73376 (E.D. Ark. Sept. 28, 2007) .......... 29

*United States ex rel. Nowak v. Medtronic, Inc.*
806 F. Supp. 2d 310 (D. Mass. 2011) .......... 13

*United States ex rel. Oliver v. Phillip Morris USA*
101 F. Supp. 3d 111 (D.D.C. 2015 .......... 14

*United States ex rel. Ondis v. City of Woonsocket*
587 F.3d 49 (1st Cir. 2009) .......... 9

*United States ex rel. Osheroff v. HealthSpring, Inc.*
938 F. Supp. 2d 724 (M.D. Tenn. 2013) .......... 14

*United States ex rel. Osheroff v. Humana, Inc.*
776 F.3d 805 (11th Cir. 2015) .......... 12, 22

*United States ex rel. Prather v. Sprint Comms., Inc.*
855 F.3d 985 (9th Cir. 2017). .......... 9

*United States ex rel. Precision Co. v. Koch*
971 F.2d 548 (10th Cir. 1992), 742 (1993)........................................................ 7

*United States ex rel. Radcliffe v. Purdue Pharma L.P.*
582 F. Supp. 2d 766 (W.D. Va. 2008)........................................................ 13

*United States ex rel. Rahimi v. Rite Aid Corp.*
3 F.4th 813 (6th Cir. 2021)........................................................ 24

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*
384 F.3d 168 (5th Cir. 2004)........................................................ 24

*United States ex rel. Reed v. KeyPoint Gov't Sols.*
923 F.3d 729 (10th Cir. 2019)........................................................ 24

*United States ex rel. Rille v. PriceWaterhouseCoopers LLP*
803 F.3d 368 (8th Cir. 2015)........................................................ 30

*United States ex rel. Rosner v. WB/Stellar IP Owner*, LLC
739 F. Supp. 2d 396 (S.D.N.Y. 2010)........................................................ 16

*United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc*.
841 F.3d 927 (11th Cir. 2016)........................................................ 12

*United States ex rel. Sanders v. USAA Fed. Sav. Bank*
2021 U.S. Dist. LEXIS 149873 (W.D. Va. Aug. 10, 2021)........................................ 25

*United States ex rel. Simmons v. Samsun Elecs. Co.*
116 F. Supp. 3d 575 (D. Md. 2015)........................................................ 32

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*
944 F.2d 1149 (3d Cir. 1991)........................................................ 7, 23

*United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*
41 F.3d 1032 (6th Cir. 1994)........................................................ 31

*United States ex rel. Vuyyuru v. Jadhav*
555 F.3d 337 (4th Cir. 2009)........................................................ 11

*United States ex rel. Westfall v. Axiom Worldwide, LLC*
2009 U.S. Dist. LEXIS 27646 (M.D. Fla. Mar. 20, 2009)........................................ 12

*United States v. Fata*
2019 U.S. Dist. LEXIS 211213 (E.D. Mich. Dec. 9, 2019)........................................ 29

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*
529 U.S. 765 (2000)........................................................ 1

**Statutes**

31 U.S.C. § 3729 *et seq*. 1, 2

31 U.S.C. § 3730(a) 2

31 U.S.C. § 3730(b)(1) 2

31 U.S.C. § 3730(b)(2) 2, 3

31 U.S.C. § 3730(b)(3) 4

31 U.S.C. §§ 3730(b)(4) 3

31 U.S.C. § 3730(d) 2, 3, 30, 31

31 U.S.C. § 3730(e)(4) 1, 3, 4, 21

31 U.S.C. § 3730(e)(4)(A) 8, 9, 22

31 U.S.C. § 3730(e)(4)(B) 8, 22

**Other Authorities**

132 Cong. Rec. H9389 31

H.R. Rep. No. 99-660 2

S. Rep. No. 99-345 3

**EXHIBITS INDEX**

| Exhibit No. | Description | Date |
|---|---|---|
| 1 | Burke v. St. Jude Medical Relator Letter | January 24, 2017 |
| 2 | Public Disclosure - Letter from Relator | January 30, 2017 |
| 3 | St. Jude Medical Settlement Agreement | July 2, 2021 |
| 4 | St. Jude Medical Minneapolis Star Tribune Article | October 11, 2016 |
| 5 | St. Jude Medical Minneapolis Star Tribune Article | October 10, 2016 |
| 6 | St. Jude Medical FDA Recall | October 10, 2016 |
| 7 | St. Jude Medical Annual Report | 2015 |
| 8 | Heart Rhythm Society Study | December 2014 |
| 9 | St. Jude Medical Global Medical Advisory | No Date |
| 10 | Proposed Order | |

## **Introduction**

The False Claims Act (FCA), 31 U.S.C § 3729 *et seq.*, is the government's primary tool for redressing civil fraud in connection with government programs and contracts. When the Act was revised in 1986 to include its modern-day whistleblower provisions, known as the *qui tam* provisions, the drafters struck a careful balance to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). This case presents the latter situation.

In this matter, the relator's complaint was filed after there were many public disclosures through government notices, newspaper articles, and other sources about St. Jude's alleged conduct. Because her complaint alleged substantially the same information as what was contained in those public disclosures, her claims must be dismissed under the "public disclosure bar" and she is not entitled to a share of the Government's settlement with St. Jude. Although the public disclosure bar, 31 U.S.C. § 3730(e)(4), contains an exception for people who are "original sources," Ms. Burke does not meet the test for an original source. She did not file her case before the public disclosures occurred. And although she personally had an implanted St. Jude device, she had no knowledge about St. Jude's conduct that was independent of and materially added to the publicly disclosed information.

Finally, even if the court were to determine that her case is not barred by the public disclosure bar—which it clearly is—there is no doubt that the relator's complaint was based primarily on public sources. Accordingly, the maximum possible award she could receive is ten

percent, and given her extremely limited contributions (if any), her award should be at or close to zero. 31 U.S.C. § 3730(d)(1).

## Background

### A. The False Claims Act

The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., is "the primary vehicle by the Government for recouping losses suffered through fraud." H.R. Rep. No. 99-660 at 18. The FCA imposes civil liability upon any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," *id*. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B). A person found to have violated the FCA is liable for civil penalties and treble damages. *Id*. § 3729(a).

A civil action under the FCA may be commenced in either of two ways. First, the United States may bring its own suit. 31 U.S.C. § 3730(a). Second, a private person (known as a relator) may bring a *qui tam* action "for the person and for the United States Government." *Id*. § 3730(b)(1). In such circumstances, "a *qui tam* relator is, in effect, suing as a partial assignee of the United States." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 n.4 (2000).

The FCA requires that *qui tam* complaints be filed in camera and served on the government along with written disclosures of all material evidence and information the relator possesses. 31 U.S.C. § 3730(b)(2). The complaint is not served on the defendant at the time of filing, and the case must remain under seal for at least 60 days. *Id*. Those procedural requirements are intended to give the government an opportunity to investigate the allegations

and make an informed decision regarding whether to intervene in the action before the defendant becomes aware of the case. *See* S. Rep. No. 99-345, at 24 (1986).

After conducting an investigation into the allegations raised in a *qui tam* complaint, the United States may either "intervene and proceed with the action" or "notify the court that it declines to take over the action," 31 U.S.C. §§ 3730(b)(2) & (b)(4). If the government elects to intervene, it "shall have the primary responsibility for prosecuting the action, and shall not be bound" by any act of the relator. *Id.* § 3730(c)(1). However, the relator may continue as a party to the action. *Id*. § 3730(c)(2)(A) - (B).

If a *qui tam* action results in the recovery of damages or civil penalties, a relator, if eligible, may receive a share of the proceeds of the action. 31 U.S.C. § 3730(d). Generally, in cases where the government has intervened, an eligible relator is entitled to between 15 and 25 percent of the proceeds. *Id*. § 3730(d)(1). In cases where the government has not intervened, the relator receives between 25 and 30 percent of the recovery. *Id.* § 3730(d)(2). The FCA also contains provisions that bar relator's action in certain circumstances. At issue here is the public disclosure bar, which bars a relator from recovering a share if her allegations are substantially the same as information that has been publicly disclosed, and she does not qualify as an original source under the statute. *Id.* at § 3730(e)(4). In addition, the FCA provides that, even if the relator meets the definition of an original source, if the relator's complaint is primarily based on publicly disclosed information, the share is capped at no more than 10 percent and may be as low as zero. *Id.* at § 3730(d)(1)

**B. Procedural History**

Debbie Burke filed her complaint under the FCA's *qui tam* provisions on November 2, 2016 (ECF 1). On January 24, 2017, the United States notified her that she might not qualify as a proper relator under the FCA (Ex. 1). Specifically, the Government advised:

> Although the United States does not intend to seek dismissal of Ms. Burke's complaint at this time, the government does not agree and cannot be deemed to agree that Ms. Burke is a proper relator. The United States reserves the right to assert the public disclosure bar under section 3730(e)(4) or any other applicable provision of the False Claims Act as a limitation on your client's claim to a share of any judgment or settlement amounts.

The relator acknowledged receipt of the letter, but did not request that the issue be resolved then, suggesting such discussions could be "premature" (Ex. 2). The Government thereafter sought extensions of the seal and intervention deadlines, as permitted by the FCA. 31 U.S.C. § 3730(b)(3). On July 7, 2021, the United States, defendant St. Jude, and the relator entered into a settlement agreement resolving specified alleged conduct (the "Settlement Agreement") (Ex. 3). Under the settlement, the relator agreed that neither "any intervention by the United States . . . [nor dismissal] shall waive or otherwise affect the ability by the United States to contend that the provisions of the [public disclosure bar] bar Relator from sharing in the proceeds of the Agreement." Ex. 3, ¶ 6.[1]

The United States notified the Court of its decision to intervene in the action for purposes of settlement on July 7, 2021 (ECF 28). The United States and relator subsequently filed a stipulation of dismissal on July 15, 2021 (ECF 30), reserving the issue of relator share. The

---

1. Even without the relator's specific agreement on this point, courts have held that intervention by the United States for purposes of settlement does not affect the applicability of the public disclosure bar. *See, e.g.*, *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d Cir. 2000).

Court entered the order the dismissing the case the next day (ECF 31). The only remaining issue to adjudicate in this matter is whether the FCA permits the relator to share in the Government's recovery. It does not.

**C. Factual Background**

On October 10, 2016, the FDA announced that St. Jude had recalled its Fortify, Unify, and Assura implantable cardiac defibrillators (ICDs). The recall advised that these devices were subject to a buildup of "lithium clusters," which could cause the battery to short circuit and prematurely deplete. As a consequence, devices that suffered from this problem may not provide the necessary shock in the event the patient experienced a dangerously fast heart rhythm. The recall affected devices manufactured before May 23, 2015; devices manufactured after that date included additional insulation that fixed the problem. The recall was public, accompanied by announcements from St. Jude and the Food and Drug Administration containing details about the defect in St. Jude's devices. Many news reports followed this announcement.

On November 2, 2016, Ms. Burke, who was implanted with a St. Jude device that was subject to the recall, but is not a Medicare patient, filed her *qui tam* complaint. Ms. Burke alleged no new information that had not already been publicly disclosed and her complaint lacks any detailed allegations about alleged false statements by St. Jude to the FDA.

**D. The Settlement Agreement**

The Settlement Agreement resolves allegations that St. Jude submitted, or caused the submission of, false claims to Medicare, TRICARE (the military health benefits program), and the Federal Employee Health Benefits Program. Ex. 3, ¶ D. The conduct resolved by the settlement centers on the Government's allegations that St. Jude provided false and misleading

information to FDA about the premature battery depletion. The Government contended that, had St. Jude been truthful with the FDA about the serious injuries and death associated with the lithium cluster short and premature battery depletion problem earlier, the FDA would have requested earlier that St. Jude initiate a voluntary recall of the devices that had been manufactured prior to the new design. More specifically, the FDA would have requested the company recall the older devices in or about November 2014, rather than October 2016 when the recall was actually announced. As a result, beneficiaries of public health programs were implanted with the older devices between November 2014 and October 2016. Ex. 3, ¶ E.

The settled claims cover devices implanted in federal health care program beneficiaries from November 20, 2014 through October 10, 2016. Ex. 3, ¶ E.i.

## ARGUMENT

### I. Congress enacted the public disclosure bar to prevent "parasitic" relators who merely regurgitate public information in a complaint while contributing little additional information.

When it was first enacted, the FCA permitted relators "to file suits and receive a share of the government's recovery even if they personally did nothing to help expose the alleged fraud." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs.*, 149 F.3d 227, 233 (3d Cir. 1998). Congress addressed this problem with a "government knowledge bar," which it eventually replaced in 1986 with the public disclosure bar. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 412 (2011). The bar "aims to 'strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts." *United States ex rel. Beauchamp v. Academi Training Ctr., LLC*, 816 F.3d 37,

43 (4th Cir. 2016) (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010)); *see also United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994) (bar sought to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own. . . . .").

Accordingly, the "FCA's broader goal [is] encouraging lawsuits based on information that is not available to the public, and thus not available to the governmental authorities with direct responsibility for the claim in question." *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). Likewise, the Tenth Circuit described the goals of the bar as "to encourage private citizens with first-hand knowledge to expose fraud" and "to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud." *United States ex rel. Precision Co. v. Koch*, 971 F.2d 548 (10th Cir. 1992), 742 (1993); *see also United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d at 703 (8th Cir. 1995) (omitting citations) (the *qui tam* provisions "seek to encourage persons with 'first-hand knowledge of the fraudulent misconduct,' or those 'who are either close observers or otherwise involved in the fraudulent activity'"); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991) ("A relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation.").

Prior to 2010, "a qui tam action was barred only if it was 'based upon' a qualifying public disclosure, a standard [the Fourth Circuit] interpreted to mean that the plaintiff must have 'actually derived' his knowledge of the fraud from the public disclosure." *United States ex rel. Beauchamp v. Academi Training Ctr., LLC*, 816 F.3d 37, 40 (4th Cir. 2016). "As amended, however, the public-disclosure bar no longer requires actual knowledge of the public disclosure, but instead applies if substantially the same allegations or transactions were publicly disclosed." *Id.* (quoting *United States ex rel. May v. Purdue Pharma, LLP*, 737 F.3d 908, 917 (4th Cir. 2013).[2]

The current version of the public disclosure bar states:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The "original source" exception requires that the individual either came forward to the government before there was a public disclosure or has "knowledge that is independent of and materially adds to the publicly disclosed allegations." *Id.* § 3730(e)(4)(B).

2. The current version of the public disclosure bar applies. The conduct set forth in the relator's complaint and in the Settlement Agreement all occurred after 2010, and the relator's complaint was filed in 2016.

In cases such as this one, in which the United States and defendant have reached a settlement, a relator prohibited from bringing a complaint by the public disclosure provision is likewise barred from sharing in the proceeds of the settlement. *See, e.g., United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d Cir. 2000) ("relators are not entitled to any share of the settlement attributable to claims that would have been subject to dismissal under [the public disclosure bar]"); *United States ex rel. Prather v. Sprint Comms., Inc.*, 855 F.3d 985, 993 (9th Cir. 2017).

**II. The allegations in the relator's complaint are "substantially the same" as publicly disclosed information.**

While the Fourth Circuit has not construed the phrase "allegations or transactions," many Courts have adopted the D.C. Circuit's interpretation set forth in *United* States *ex rel. Springfield Terminal Ry. Co.v. Quinn,* 14 F.3d 645, 654 (D.C. Cir. 1994). *See United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 580 (E.D. Va. 2011) (compiling cases). The D.C. Circuit has articulated what is an allegation and transaction as follows:

> If X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.,* the conclusion that fraud has been committed. The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit *qui tam* actions *only* when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain.

*Quinn,* 14 F.3d at 654. The court noted that "[w]hen X *and* Y surface publicly, or when Z is broadcast, however, there is little need for *qui tam* action . . . which might decrease the government's recovery in suits it has chosen to pursue." *Id.* at 654. The allegations or transactions need not, however, all be contained within a single disclosure. *See United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54. (1st Cir. 2009) ("The two states of facts may

come from different sources, as long as the disclosures together lead to a plausible inference of fraud.”).

Crucially, relators cannot escape the public disclosure bar merely by alleging some modicum of undisclosed facts. Indeed, “if a *qui tam* action is even partly based upon public allegations or transactions then the [public disclosure] bar applies. Even if [relators] uncovered some nuggets of new, *i.e.*, non-public, information, [their] claims of fraud are based at least in part on allegations already publicly disclosed.” *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008); *accord United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 275 (4th Cir. 2014) (bar “encompasses actions even partly based upon” publicly disclosed information) (internal quotations and citations omitted). The FCA does not require that “the public disclosure matches *with specificity* the allegations made by a *qui tam* relator.” *United States ex rel. Black v. Health & Hosp. Corp.*, 494 Fed. Appx. 285, 294 (4th Cir. 2012) (emphasis in original). Rather, the bar “is satisfied if the disclosure ‘put[s] the Federal Government on notice of a potential fraud.’” *Id.* (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 291 (2010)).

Moreover, as another court has observed, “[c]ourts have construed the definition of ‘public disclosure’ somewhat broadly, such that it is sufficient that the general practice has already been publicly disclosed. The level of public disclosure necessary to trigger the bar is relativity low, may be general in nature, and a relator’s ability to provide more specific information than that relayed by the public disclosure is irrelevant.” *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 31 (D.D.C. 2007) (internal quotations and citations omitted); *see also United States ex rel. Heron v. Nationstar Mortg.,*

*LLC*, 2021 U.S. Dist. LEXIS 175182, at *15 (D. Colo. Sept. 15, 2021) (the bar "applies if the essence of the relator's allegations was derived from a prior public disclosure . . . . a complaint can be substantially the same even when only based in part on public disclosures.") (internal quotations and citations omitted); *Citynet*, *LLC v. Frontier W. Va. Inc.*, 2018 U.S. Dist. LEXIS 55049, at *64-65 (W.D. Va. Mar. 30, 2018) (courts "look to whether the disclosures provide enough information to . . . alert law enforcement authorities to the likelihood of wrongdoing") (internal citations omitted). The bar "does not require that the alleged fraud, itself, have been disclosed." *United States ex rel. Foreman v. AECOM*, 454 F. Supp. 3d 254, 262 (S.D.N.Y. 2020).

**A. The allegations or transactions were publicly disclosed in the "news media" and in "Federal reports."**

i. <u>The "news media"</u>

Although the FCA does not define the terms "news media," courts have interpreted the phrase broadly. While "news media" clearly includes newspaper articles, *see United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 350 (4th Cir. 2009), it is not limited to traditional journalism. Indeed, the enumerated public disclosures, "especially 'news media,'' suggest that the public disclosure bar provides a broad sweep." *Schindler Elevator Corp. v. United* States *ex rel. Kirk*, 563 U.S. 401, 408 (2011) (internal quotations and citations omitted); *see also United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014) ("the Supreme Court has acknowledged the term has a 'broad sweep'"). Accordingly, courts have concluded "news media" includes press releases and information accessible on websites. *United States ex rel. Beauchamp v. Academi Training Ctr., LLC*, 816 F.3d 37, 43 n.6 (4th Cir. 2016) ("Court have unanimously construed the term 'public disclosure' to include websites and

online articles"); *see also United States ex rel. Doe v. Staples, Inc.*, 932 F. Supp. 2d 34, 40 (D.D.C. 2013) ("Courts . . . have construed the term 'news media' to include readily accessible websites."); *United States ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 732-33 (M.D. Tenn. 2013) (noting that "many court[s] have held that information on readily accessible public websites constitutes public disclosure"). Likewise, magazine articles,[3] industry newsletters,[4] company websites,[5] blogs,[6] press releases,[7] and trade journals[8] have all qualified as "news media" under the FCA.

Several newspaper articles, press releases and/or information on public websites publicly disclosed the allegations prior to the date relator filed her complaint in this case. These articles describe the FDA recall, the nature of the problem, and that St. Jude had known about the problem for years, continued to sell the older devices after correcting the defect in May 2015, and did not inform patients or doctors about the problem until the 2016 recall. The articles, press releases, and public websites containing these disclosures are:

---

3. *United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 161 F.3d 533 (9th Cir. 1998).
4. *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927 (11th Cir. 2016).
5. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805 (11th Cir. 2015).
6. *United States ex rel. Fryberger v. Kiewit Pac. Co.*, 2013 U.S. Dist. LEXIS 153135, at *26-27 (N.D. Cal. Oct. 23, 2013).
7. *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014) (public utility press releases are "news media"); *see also United States ex rel. Hirt v. Walgreen Co.*, 2016 U.S. Dist. LEXIS 25859, at *14 (M.D. Tenn. Mar. 2, 2016) (government press release is "news media").
8. *United States ex rel. Westfall v. Axiom Worldwide, LLC*, 2009 U.S. Dist. LEXIS 27646, at *17 (M.D. Fla. Mar. 20, 2009) (Anesthesia & Pain Coder's Pink Sheet); *United States ex rel. Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907 (N.D. Ill. Nov. 28, 2005) (Modern Healthcare); *United States ex rel. Gear v. Emergency Med. Assocs., Inc.*, 2005 U.S. Dist. LEXIS 7971 (N.D. Ill. Apr. 13, 2005) (Physicians Weekly and Physician's News Digest).

1. Joe Carlson, *St. Jude warns batteries in up to 350,000 defibrillators worldwide could short circuit and fail*, MINNEAPOLIS STAR TRIBUNE, Oct. 11, 2016 (Exhibit 4).

2. Joe Carlson, *St. Jude stock stable after heart device battery disclosure*, MINNEAPOLIS STAR TRIBUNE, Oct. 12, 2016 (Exhibit 5).

3. FDA, *St. Jude Medical Recalls Implantable Cardioverter Defibrillators (ICD) and Cardiac Resynchronization Therapy Defibrillators (CRT-D) Due to Premature Battery Depletion*. Oct. 10, 2016. (Exhibit 6) (the "FDA Recall Notice").[9]

4. St. Jude's 2015 Annual Report. This report is cited specifically in relator's complaint. Compl. ¶ 61. The report was previously available online. (Ex. 7). *See* p. 62 (listing web address for digital version of report).

Scholarly articles, like newspapers, are also "news media." *See United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 582 F. Supp. 2d 766, 770 (W.D. Va. 2008) ("The term 'news media' includes scholarly, scientific, and technical periodicals, including trade journals"); *United States ex rel. Colquitt v. Abbott Labs*, 864 F. Supp. 2d 499, 518 (N.D. Tex. 2012) ("scholarly periodicals" constitute the "news media"); *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 320 (D. Mass. 2011) (finding *American Journal of Therapeutics* to constitute a public disclosure). The following scholarly articles also contain public disclosures applicable to this case:

1. Sean D. Pokorney *et al.*, *Novel mechanism of premature battery failure due to lithium cluster formation in implantable cardioverter-defibrillators*, 11 HEARTH RHYTHM 12, 20190 (Dec. 2014) (Ex. 8) (the "Duke Study").

2. An article in the *Journal of Internal Medicine* (2007). The article is referenced in the relator's complaint, Compl. ¶ 60, but the article's citation is not provided.

9. The recall notice was previously published on FDA's website, as shown by the web address in the lower left corner, but is no longer available.

Finally, online databases are merely a subset of the types of information available on public websites. Thus, courts have also held that online databases constitute the news media. *See United States ex rel. Oliver v. Phillip Morris USA*, 101 F. Supp. 3d 111, 124 (D.D.C. 2015) (memo which was posted "online in a public, searchable database . . . constituted a public disclosure from the news media"); *United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 U.S. Dist. LEXIS 188295, at *17 (C.D. Cal. May 19, 2016) ("We find that the public database listings, faculty profiles, and reports described a 'transaction' within the meaning of the public disclosure bar"), *aff'd* 713 Fed. Appx. 724 (9th Cir. Feb. 28, 2018).

The following online databases constitute public disclosures:

1. FDA's Manufacturer and User Facility Device Experience Database (MAUDE). The database contains manufacturer-submitted medical device reports and is available to the public online at: https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/search.cfm.

2. St. Jude's Online Medical Device Database. This database allowed recipients of its devices to look up the manufacture date of their device online. The dataset is referred to in a St. Jude medical advisory, attached as Exhibit 9, as well as in the relator's complaint. Compl. ¶ 41. (Although Exhibit 9 does not have a date, relator's complaint makes clear this was public at the time the recall was announced.)

While the St. Jude database was effectively limited to recipients of its devices, a database need not be available to all members of the public in order to be considered news media. What matters is that it is available to a large group of people. *See United States ex rel. Hastings v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 96864, at *35-36 (C.D. Cal. July 25, 2014) (holding that database available real estate agents was a public disclosure); *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 2014 U.S. Dist. LEXIS 123182, at *31 (E.D. Pa. Sept. 4, 2014) (customs database limited to paid subscribers was a public disclosure).

The St. Jude database was available to at least the over 250,000 users affected by the recall. *See* FDA Recall Notice, Ex. 6 at 2 (251,346 devices recalled in United States).

ii. "Federal reports"

Federal reports mean any Federal government information available to the public. The Supreme Court, in interpreting the term "report" in the FCA, held that its broad and ordinary meaning controlled, which included "something that gives information," a "notification," and an "official or formal statement of facts." *Schindler Elevator Corp. v. United States ex rel. Kirk,* 563 U.S. 401, 407-08 (2011). In so holding, the Court concluded that a response to a Freedom of Information Act request constituted a "report" for purposes of the public disclosure bar. *Id.* at 411. Moreover, the Court held that all documents produced in response to the FOIA request also constituted a "public disclosure." *Id.* The Court specifically rejected defining a report as a "synthesis of information," as the court of appeals had done. *Id.* at 409.[10]

The "FDA Recall Notice," identified in the previous section as "news media," therefore also qualifies as a Federal report. The Notice provides information furnished by a federal agency and available to the public online, and therefore constitutes a Federal report.

Courts have also held that publicly available government databases that contain raw information constitute a "Federal report." "Courts have . . . broadly construed the term 'administrative reports' to include publicly-searchable databases." *United States ex rel. Doe v. Staples, Inc.*, 932 F. Supp. 2d 34, 40 (D.D.C. Mar. 25, 2013). *See also United States ex rel.*

10. The 2010 amendments to the public disclosure bar narrowed the term from "administrative reports," which included state and local government reports, to only "Federal reports." *See A1 Procurement, LLC v. Thermor, Inc.*, 2017 U.S. Dist. LEXIS 105343 at n.12 (E.D. Va. Apr. 4, 2017).

*Rosner v. WB/Stellar IP Owner,* LLC, 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010) (city database was an administrative report); *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 2014 U.S. Dist. LEXIS 123182, at *31 (E.D. Pa. Sept. 4, 2014) (customs database was a federal report). FDA's MAUDE database, discussed above under news media, is a federal government public database; therefore, it qualifies as *both* news media and a Federal report.

**B. The relator's allegations are substantially the same as publicly disclosed information in the news media and in Federal reports.**

The relator's complaint contains the following allegations: (1) St. Jude "knew" that the devices suffered from a serious defect that could cause premature battery depletion; (2) St. Jude took "corrective action" on May 23, 2015; (3) St. Jude continued to "promote, market, and sell" the older devices even after making the manufacturing change; (4) St. Jude did not notify healthcare providers of the problem until the recall in October 2016; and (5) it was "reasonably foreseeable" that Medicare paid for the implantation of some of the defective devices. Each of these allegations were previously made public in the news media and in Federal reports.

**1. Allegation 1: St. Jude "knew" that the devices suffered from a defect that could cause premature battery depletion.**

The relator first alleges that "St. Jude knew as early as 2010 that implantable cardiac devices that it manufactured and sold had a potentially life threating defect, that the batteries in certain devices were prone to premature battery depletion." Compl. ¶¶ 1, 47. The relator further alleges: "In December 2014, in an attempt to explain the unexpected failure they had observed in St. Jude ICD devices, several doctors from the Duke University Medical Center published a study entitled 'Novel mechanism of premature battery failure due to lithium cluster

formation in implantable cardioverter-defibrillators.'" Compl. ¶¶ 52-54. These allegations were publicly disclosed in the news media and Federal reports.

The Duke Study from 2014 publicly discloses the defect and the company's prior knowledge. It describes "a novel mechanism of premature, accelerated battery failure in St. Jude Medical Fortify Assura implantable cardioverter-defibrillators . . . ." Ex. 8 at 1. Notably, the article states: "The premature battery failure appeared to be caused by lithium cluster formation between the battery cathode and anode, causing a short circuit and rapid battery depletion. The same battery is used in the Fortify ICDs and the Unify [devices]." Ex. 8 at 1. The article further states that "St. Jude Medical identified a total of 10 cases of premature battery depletion . . . due to lithium cluster causing a short circuit." Ex. 8 at 4.

Likewise, the October 11, 2016 *Minneapolis Star Tribune* article specifically alleges that St. Jude was aware of the problem: "The potential problem has been known since late 2014, when St. Jude worked with researchers at Duke University Medical Center in North Carolina who said they discovered a new mode of battery failure called 'lithium clusters formation.'" Ex. 4. The article likewise states that the problem was linked to two deaths. Ex. 4 (St. Jude "said the rare but serious problem with the lithium batteries is already linked to two deaths.").

The relator's complaint also cites reports in FDA's MAUDE database. The complaint acknowledges that relator (or her counsel) searched the database and identified various reports of alleged St. Jude device malfunctions between 2010 and 2016. Compl. ¶¶ 55. The MAUDE reports relator identified include a death in 2014 and an "injury" in 2011. Compl. ¶ 55(a)-(b).

**Allegation 2: St. Jude took corrective action in 2015.**

The complaint alleges that St. Jude took "corrective manufacturing action to remedy the defect" in May 2015. Compl. ¶¶ 1, 48. There can be little dispute that this information was publicly disclosed. The "corrective action" was first publicized in 2014 in the Duke Study: "[T]he manufacturer has modified the batteries to prevent shorting by the lithium clusters. An additional layer of insulation was placed on the header of the battery to prevent lithium clusters from forming near the exposed cathode." Ex. 8 at 4. The October 12, 2016 *Star Tribune* article also disclosed the company made a "design improvement to address the problem on May 23, 2015." Ex. 5. Accordingly, the design change was disclosed in the news media as early as 2014 and again in 2016, both before the relator filed her complaint.

**Allegation 3: St. Jude continued to "promote, market, and sell" the older devices even after making the manufacturing change.**

The crux of the relator's allegations is that St. Jude continued to sell the older devices after May 23, 2015, when the new devices with the fix were manufactured. Compl. ¶¶ 1, 57. As the relator concedes in her motion, "there were sufficient facts in the public record for a stranger to conclude that St. Jude had admittedly defective devices," ECF 33 at 2, but nonetheless contends that it was not publicly disclosed that the company continued to sell the older devices after May 23, 2015. She is wrong.

The FDA publicly disclosed in the Recall Notice that older devices were sold after May 2015. FDA published the notice on October 10, 2016, before the relator filed her complaint. Ex. 6. The Recall Notice identified the devices subject to the recall and described the problem ("rapid battery failure caused by deposits of lithium . . . causing a short circuit."). Ex. 6, at 2. Critically, the Recall Notice included both the manufacturing dates of the problematic devices

***and their distribution dates***, clearly showing that the company continued to sell and distribute the older devices ***after*** the corrective action of May 23, 2015 (Ex. 6 at 1):

> **Recalled Product(s):**
>
> - Fortify, Unify, and Assura Implantable Cardioverter Defibrillators (ICD) and Cardiac Resynchronization Therapy Defibrillators (CRT-D)
> - Model/Item Numbers: See "**Full List of Affected Devices**"
> - Manufacturing Dates: January 2010 to May 2015
> - Distribution Dates: February 2010 to October 2016
> - Devices Recalled in the U.S.: 251,346 Nationwide

The distribution dates show that older devices were distributed up through October 2016 (then the present date), well after the last manufacture date of May 2015. The core of the relator's allegations are thus plainly discernible from the FDA's Recall Notice.

The relator may argue that the Notice does not explicitly say the devices were implanted into patients, but that is the only logical conclusion for a recall of "distributed" devices, and the Notice specifically said "patients with a St. Jude" device may be "affected." Ex. 6 at 2. Indeed, an FDA recall would have been pointless if none of the devices had actually been implanted into patients.[11] Regardless, the October 11, 2016 *Minneapolis Star Tribune* article, which pre-dated relator's complaint, explicitly states that St. Jude medical recalled "almost 350,000 of its ***implanted*** defibrillators . . . ." Ex. 4 (emphasis added). These public disclosures easily surpass the "relativity low" bar under which only the "general practice [must] already [have] been publicly disclosed." *United States ex rel. Hockett v. Columbia/HCA Healthcare*

11. The relator's own complaint likewise alleges that St. Jude "continued to promote, market, and sell" the devices, Compl. ¶ 50, without using the word "implant." *See also* Compl. ¶ 6 ("St. Jude "continued to promote and sell" the devices); Compl. ¶ 58 (St. Jude "continued to sell").

*Corp.*, 498 F. Supp. 2d 25, 46 (D.D.C. 2007).

In addition to the FDA Recall Notice and the media reports, this aspect of relator's allegations was also publicly disclosed in St. Jude's Online Medical Device Database. In fact, that is how relator contends she learned about the manufacture date of her own device. Compl. ¶ 41. Literally any one of the over 250,000 patients with affected devices could have also looked up the manufacture date of their own devices, added that data point to the information in the FDA Recall Notice and other public information, and filed the same complaint that relator Burke did. *See, e.g., United States ex rel. Hastings v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 96864, at *35-36 (C.D. Cal. July 15, 2014) ("Plaintiff's knowledge obtained from sources such as a Multiple Listing Service or like databases that are accessible to the public or large numbers of real estate agents cannot be described as firsthand. To hold otherwise 'would mean that anyone — an insider or an outsider — who conducts an investigation and learns of alleged fraud from whatever sources [could] maintain a *qui tam* action.'") (citation omitted).

**Allegation 4: St. Jude did not notify healthcare providers of the problem until the recall in October 2016.**

The complaint also alleges that St. Jude did not notify healthcare providers until 2016, but this, too, was publicly disclosed in the news media. *See* Compl. ¶¶ 51, 58. "After studying the issue for nearly two years, St. Jude Medical alerted patients and doctors Tuesday that almost 350,000 of its implanted defibrillators have batteries that could fail with little warning," blared the *Minneapolis Star Tribune* on October 11, 2016. Ex. 4. A follow-up article the next day was even more explicit: "St. Jude [and the FDA] . . . 'should have notified doctors and patients much sooner, because it is the doctor's and patient's decision as to what to do, not [St. Jude] or the FDA'") (quoting Dr. Robert Hauser) (Ex. 5). The article continues, "[i]nitially, St. Jude's

medical advisory board recommended not publicizing the issue . . . . [a]s the numbers over time increased, [St. Jude] got to a point of the issuance of an advisory . . . ." *Id.* (quoting, in part, a St. Jude spokesperson). Accordingly, the relator's allegations regarding manufacturer communications with doctors also were publicly disclosed before relator filed her complaint.

**Allegation 5: It was "reasonably foreseeable" that Medicare paid for the implantation of some of the defective devices.**

Finally, the complaint contains vague allegations about Medicare payments for the devices. The relator has no direct knowledge of these contentions, but assumes that it was "reasonably foreseeable" that Medicare would have paid for some of the defective devices. Compl. ¶ 59. In fact, the device implanted into the relator was reimbursed by a private payer, not Medicare. *See id.* The complaint expressly cites to general statistics listed in two public disclosures: the *Journal of Internal Medicine* (although without saying which specific article), and to St. Jude's public annual report (Ex. 7). Compl. ¶¶ 60-62. Both of these sources are "news media" and therefore public disclosures.

All of the relator's allegations were thus publicly disclosed in the news media and Federal reports. In fact, the complaint even cites to a number of these sources. Accordingly, the relator's allegations are "substantially the same" as those publicly disclosed. *Id.* § 3730(e)(4).

## III. The relator is not an "original source" of the information.

### A. The original source rule requires that relators possess significant information that is *both* "independent of" and "materially adds to" the public disclosures.

The FCA provides a narrow exception to the public disclosure bar for genuine whistleblowers who are the "original source" of the public information. 31 U.S.C. § 3730(e)(4)(A). An original source is one who either voluntarily discloses information about

the fraud to the government before a public disclosure, or one who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under" the FCA. 31 U.S.C. § 3730(e)(4)(B). Relator plainly does not qualify under the first prong of the original source exception. Regarding the second, courts have found that a person's knowledge is "independent" if it is "not dependent on public disclosure." *United States ex rel. Black v. Health & Hosp. Corp.*, 494 Fed. Appx. 285, 296 (4th Cir. 2012). A relator "'materially adds' to the public disclosures when it contributes information . . . that adds in a significant way to the essential factual background: 'the who, what, when, where, and how of the events at issue.'" *United States ex rel. Fadlalla v. DynCorp Int'l, LLC*, 402 F. Supp. 3d 162, 185 (D. Md. 2019) (internal citations omitted). The "materially adds" standard is a "rigorous" one that places a "meaningful hurdle to overcoming the public disclosure bar." *United States ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704, 717 (N.D. Cal. 2020).

A relator does not "materially add" to publicly disclosed information "merely [by] providing details or background information about an already-disclosed fraud." *United States ex rel. Amico*, 2015 U.S. Dist. LEXIS 195814, at *27 (S.D.N.Y. June 8, 2015). "In the context of the False Claims Act, allegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud—they must add value to what the government already knew." *United States ex rel. Hastings v. Wells Fargo Bank, NA*, 656 Fed. Appx. 328, 331-332 (9th Cir. 2016); *see also United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 815 (11th Cir. 2015) (rejecting argument that relator met the "materially add" test where complaint only provided "background information and details").

Nor do relators qualify as an "original source" merely because they added context to or recognize the significance of public information. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991) ("A relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation.").[12]

In determining under the prior version of the definition of an original source whether a relator's information is "independent," courts have held that a relator cannot manufacture "original source" status by conducting their own investigation. "[C]ollateral research and investigations . . . do not establish direct and independent knowledge of the information on which the allegations are based." *United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 703 (8th Cir. 1995) (omitting citations). This is particularly true where the relator's own "investigation" does nothing more than obtain from a different source information that is already in the public domain. "[S]econd-hand information may [not] be converted into 'direct and independent knowledge' simply because the plaintiff discovered through investigation or experience what the public already knew. Instead, the investigation or experience of the relator

12. *See also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993) ("Nor does the fact that [relator's] background knowledge enabled it to understand the significance of the information acquired in the [publicly disclosed information] make its knowledge independent of the publicly disclosed information.") (internal quotations and citations omitted); *United States ex rel. JDJ & Assocs., LLP v. Natixis*, 2017 U.S. Dist. LEXIS 164106, at *33 (S.D.N.Y. Sept. 29, 2017) ("combining publicly available information with specialized expertise is not sufficient to overcome the first step of the public disclosure bar"); *United States ex rel. Ketroser v. Mayo Found.*, 2011 U.S. Dist. LEXIS 80385, at *7 (D. Minn. July 22, 2011) (relator's "construction of a theory of liability" does not "transform" him into an "original source").

either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts, that puts a government agency 'on the trail' of fraud, where that fraud might otherwise go unnoticed." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys*., 384 F.3d 168, 179 (5th Cir. 2004).[13]

And—particularly applicable to this case—relators do not "materially add" to the allegations by providing representative examples of the fraud, even those based on their own personal experience. "[G]iving specific examples of publicly known fraud does not provide any significant new information." *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 760 (10th Cir. 2019) (citation omitted); *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, at 831 (6th Cir. 2021) (affirming district court's holding that "[r]elator's specific examples [of the fraud] did not materially add to the public disclosures").[14] For example, in *United States ex rel. Doe v. Stanford Healthcare Billing Dep't*, 2020 U.S. Dist. LEXIS 40906 (C.D. Cal. Feb. 4, 2020), the court considered the applicability of the public disclosure bar to relator's fraudulent medical billing allegations. Those allegations were largely based on public information. The only exception were allegations that "are almost exclusively supported by Relator's personal experience with Stanford Health Care when she underwent surgery at Stanford Hospital." *Id.* at

13. While the current version of the FCA no longer requires "direct" knowledge, the relator's information must still be "independent" of the public disclosures.

14. *See also United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 212 (1st Cir. 2016) (specific examples do not materially add to public disclosures); *United States* ex rel. *White v. Gentiva Health Servs.*, 2014 U.S. Dist. LEXIS 86156, at *33-34 (E.D. Tenn. June 25, 2014) (relator's "allegations provided illustrative examples" and thus do not "materially add to the publicly disclosed allegations."); *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 843 (E.D. Va. 2013) (relator's allegations adding only "illustrative examples" of the fraud "does not materially add to the publicly disclosed allegations"), *rev'd on other grounds*, 816 F.3d 37 (4th Cir. 2016).

*1-2. The court held that relator's own experience did not materially add to the public information. "[T]he only independent evidence alleged in the complaint appears to be Relator's single surgery experience at Stanford . . . . the Court cannot say that this 'materially adds' to the government information because little can be inferred from a single instance of incorrect billing.'" *Id.* at *4. *See also United States ex rel. Sanders v. USAA Fed. Sav. Bank*, 2021 U.S. Dist. LEXIS 149873, at *20-21 (W.D. Va. Aug. 10, 2021) (relator not an original source merely because they were a "member" of the defendant credit union); *United States ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704, 717 (N.D. Cal. 2020) (finding the relator, a patient at a hospital, was not an original source of billing fraud).

*United States ex rel. Allen v. Guidant Corp. et al.*, 2012 U.S. Dist. LEXIS 34192 (D. Minn. Mar. 14, 2012) is not to the contrary, and, in any event, was decided before Congress amended the public disclosure bar. In *Guidant*, the court held that a patient implanted with a recalled device qualified as an original source. *Id.* at *27-29. However, the relator's own device in that case had malfunctioned, and thus, "Relator has personal knowledge of the propensity for [the] devices . . . to malfunction." *Id.* at *27. In contrast, there is no suggestion in this case that relator's device malfunctioned, either before the public disclosures or after. Moreover, *Guidant* was decided before Congress amended the FCA to include the "materially adds to" requirement, *id.* at *24, and so the relator had no burden at that time to show that his personal experience added in any meaningful way to the publicly available information. Were that case decided under the new definition of original source, the outcome almost certainly would have been different. Finally, the *Guidant* decision goes against the overwhelming weight of authority, discussed above, holding that mere examples of false claims are insufficient to

confer original source status, and the Government has not located a single court decision following *Guidant*.

**B. The relator is not an original source because she has no independent information other than having received a device, which does not "materially add" to the public information.**

Relator is a patient who received one of St. Jude's devices, learned of the recall from public sources, and filed a *qui tam*. She has no actual information about St. Jude's conduct, the changes the company made to the devices, the problem with the batteries, its communications with doctors, its submissions and communications with the FDA, the identities of employees at St. Jude involved in the allegations, or the payment for the devices by public health programs. Relator provided no information about the alleged false statements St. Jude made to the FDA in 2014—the critical allegations underlying the Covered Conduct in the Settlement Agreement. Rather, as previously discussed, the relator's complaint consists almost entirely of public information. The complaint expressly borrows from the Duke Study, the FDA Recall Notice, FDA's MAUDE database, and background information and general statistics culled from St. Jude's public annual report and an article in the *Journal of Internal Medicine*. There can be no dispute that relator's allegations are not "independent" of these sources, as her complaint copies directly from them. Nor does relator materially add to the information in these sources or to the articles in the *Minneapolis Star Tribune*.

Rather, relator's sole purported "independent" information is her own personal experience of being implanted with a recalled device. Compl. ¶¶ 41-46. The complaint alleges that relator: (a) was implanted with a device on September 26, 2016 at Johns Hopkins Hospital; (b) a St. Jude representative was present at relator's surgery and provided the device to relator's

surgeon; (c) relator's surgeon was apparently "unaware" of the "issues" with the devices before the FDA recall; and (d) relator's device was manufactured on May 12, 2015, information that relator learned "through St. Jude's online medical advisory regarding the FDA recall." *Id.*

The relator's own implantation of the device is neither independent of publicly disclosed allegations nor materially adds to them. First, the relator's experience, at most, is just one example of what was clearly disclosed in the FDA Recall Notice—that some devices manufactured before May 23, 2015 were distributed up through October 2016. Relator's own device, in fact, is not an example of one of the fraudulent claims that could be redressed by the FCA because her device was paid for by private insurance, ***not*** Medicare (or apparently any other federal government health program). Compl. ¶ 59 ("Relator is not a Medicare beneficiary"); *see United States ex rel. Doe v. Stanford Healthcare Billing Dep't*, 2020 U.S. Dist. LEXIS 40906, at *2 (C.D. Cal. Feb. 4, 2020) (in opinion finding that relator was not an original source, noting that "Relator's surgery was covered by private insurance, not Medicare, so there was no claim made to any government agency for the surgery."). But even if relator's own surgery qualified as a proper example of the fraud, it constitutes only a single instance among thousands of implants occurring between May 2015 and October 2016. In other words, relator's recounting of her own surgery does not materially add anything to what was publicly disclosed. Any other person who received a St. Jude device could have filed the same complaint that she did.

Relator's allegations regarding her own device are also not independent of public sources. Relator concedes that she looked up the manufacture date from St. Jude's Online Medical Device Database. Compl. ¶ 41. This database, discussed above, *supra* at 14, was a public disclosure available to over a quarter million patients in the United States. And even if the database were not a public disclosure, relator combined the information she obtained from that database with the date that the new devices were manufactured—contained in the FDA Recall Notice and *Star Tribune* articles—still making her allegations at least partly dependent on public disclosures.

The same goes for her conclusion that doctors were previously unaware of the device defects based on relator's communication with her own physician. Compl. ¶ 44. That allegation does not "materially add" to the public disclosures. News articles specifically discussed that doctors and patients were unaware of the problems with the devices. *E.g.* the Oct. 12, 2016 *Minneapolis Star Tribune* article, Ex. 5 ("St. Jude [and the FDA] . . . 'should have notified doctors and patients much sooner'").

Accepting the relator's own experience as sufficient to confer original source status would render the public disclosure bar toothless. The hundreds of thousands of patients affected by recalls of St. Jude products, as well as other drugs and devices at issue in any number of FCA cases, are not original sources merely because they are an end user of the product. To hold otherwise would deputize millions of patients as potential *qui tam* relators, with promises of a substantial prize, who have no independent and material knowledge to share with the government. This is exactly the type of result the Supreme Court has warned against. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 413 (2011) ("Although

[relator] alleges that he became suspicious from his own experiences as a veteran working at [the company], anyone could have [obtained the same public information] and then filed the same suit.”).

**C. Relator cannot avoid the public disclosure bar by claiming her complaint was a “catalyst” for the Government’s investigation and ultimate settlement.**

Relator’s complaint is clearly barred by the prior public disclosures, and Ms. Burke cannot qualify as an original source who had knowledge independent of and that materially added to the public information. In an attempt to nonetheless resurrect her claim to a share, relator asserts that she should receive an award because she “triggered the government’s investigation.” ECF 33 at 6. Courts have consistently rejected that argument, holding that an otherwise barred relator cannot share in the government’s recovery merely by asserting that the filing of the *qui tam* led to the settlement, even if true. In *United States ex rel. Hays v. Hoffman*, 325 F.3d 982, 990 (8th Cir. 2003), the Eighth Circuit held that an original source relator must “have ‘direct and independent knowledge of the information on which the allegations are based[,]’” noting that the court has previously “squarely rejected this ‘catalyst’ theory” of recovery. *See also United States v. Fata*, 2019 U.S. Dist. LEXIS 211213, at *8 (E.D. Mich. Dec. 9, 2019) (rejecting argument that relator should be able to recover for instigating the government’s investigation as “inconsistent with the explicit statutory language of the False Claims Act”); *United States ex rel. Montgomery v. St. Edward Mercy Med. Ctr.*, 2007 U.S. Dist. LEXIS 73376, at *30 (E.D. Ark. Sept. 28, 2007) (rejecting argument that relator could proceed because he “triggered the government’s investigation”); *United States ex rel. Findley v. FPC-Boron Employees’ Club*, 105 F.3d 675, 688 (D.C. Cir. 1997) (“A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the

material elements of the violation already have been publicly disclosed."). Nothing in the plain text of the FCA authorizes an award merely for purportedly triggering a government investigation. *United States ex rel. Rille v. PriceWaterhouseCoopers LLP*, 803 F.3d 368, 374 (8th Cir. 2015) (en banc) ("[w]hatever the merits of this [catalyst] theory as a policy matter, it is not derived from the statute."); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res*, 532 U.S. 598, 605-10 (2001) (in non-FCA context, rejecting "catalyst theory" of recovery where not authorized by statute).

Courts have properly rejected arguments like relator's because they amount to an end-run around the public disclosure bar. The entire purpose of provision is to bar relators who cobble together public information that is equally available to government authorities to act upon. Adopting relator's theory would allow virtually anyone to file a lawsuit as soon there has been a public disclosure and then assert that their complaint spurred the government's investigation.

### IV. Even if the relator is entitled to a share—which she is not—the applicable share range is 0-10%, and within that range the appropriate award is at the bottom.

Even if the Court were to find that the relator were entitled to some share, the applicable share range would not be the 15 to 25 percent range the relator proposes. The FCA specifically provides that where

> the action is one which the court finds to be ***based primarily*** *on* disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a . . . administrative . . . report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation….

31 U.S.C. § 3730(d)(1) (emphasis added). The "lesser range (up to 10% of the proceeds) is provided for the (presumably unusual) cases in which an 'original source' relator asserts a claim

that is 'primarily based' on information that has been publicly disclosed and that the relator did not provide." *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 105 (3d Cir. 2000). The Fifth Circuit has explained that the legislative history of 31 U.S.C. § 3730(d)(1) indicates that "Congress included that provision to provide for 'the case where the information has already been disclosed and the person qualifies as an 'original source' but where the essential elements of the case were provided to the government or news media by someone other than the qui tam plaintiff.'" *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 452 (5th Cir. 1995) (citing 132 Cong. Rec. H9389 (statement of Rep. Berman)); see *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co*., 41 F.3d 1032, 1039 (6th Cir. 1994) (commenting that had allegations been reported in the news media, relator "would certainly have been limited to a 10 percent ceiling").

Thus, even if relator Burke qualifies as an original source—which she does not—there can be little doubt that her complaint is "primarily based upon" the enumerated public disclosures. Her complaint expressly cites and relies upon the public disclosures, including the FDA Recall Notice, FDA's MAUDE database, and the Duke Study. Even the information about her own device comes from a public disclosure—St. Jude's Online Medical Device Database.

The only remaining question is the "significance of the information and the role of the person bringing the action in advancing the case to litigation." 31 U.S.C. § 3730(d). The FCA's legislative history sets forth three factors for courts to consider in making this determination: "(1) the significance of the information provided to the government by the *qui tam* plaintiff; (2) the contribution of the *qui tam* plaintiff to the result; and (3) whether the information in the suit provided by the relator was previously known to the government."

*United States ex rel. Simmons v. Samsun Elecs. Co.*, 116 F. Supp. 3d 575, 578 (D. Md. 2015).

To the extent this rarely-used provision applies at all, all three factors counsel in favor of a share at zero or the very bottom of the range. The relator brought no non-public information, let alone significant information, to the attention of the government. For the same reason, all of the information was already known to the government. Indeed, what she claims to be her most important piece of information—that St. Jude continued to sell older devices—was publicly identified in the FDA's own Recall Notice. And relator had no information about St. Jude's allegedly false statements to the FDA in 2014, which was the basis for the Government's settlement with St. Jude.

As for the relator's contribution to the action and its resolution, she made none. The relator provided no non-public documents (other than information about her own surgery), did not provide names of any witnesses (except her own surgeon), did not review any documents the Government obtained from St. Jude during the investigation, and had no expertise or other unique perspective to provide the Government. Nor did the Government seek any information from the relator in connection with its investigation.[15]

While the Government's settlement with St. Jude addressed a significant safety issue, as the relator argues, ECF 33 at 6, that issue was already known to the government before relator filed her complaint. While relator claims that her lawsuit "probabl[y]" caused "St. Jude to stop

---

15. Relators are not entitled to a greater share merely by claiming to be available to the government, even when that offer is not taken up. "[Relator] is not entitled to a greater share of the settlement for help that he wanted or 'offered' to contribute; the relevant factor considers the help he did contribute . . . . the Government is entitled to turn down such offers [based] on its view that the [relator] did not have the expertise to add substantial assistance to the investigation." *United States ex rel. Simmons v. Samsung Elecs. Co.*, 116 F. Supp. 3d 575, 579 (D. Md. 2015).

its offending practice," ECF 33 at 8, by the time relator even knew about the issue, St. Jude had already recalled the devices. Moreover, the relator's complaint was under seal and unknown to the company until at least April 2020, years after the recall.[16]

Relator also relies on DOJ's relator share guidelines, ECF 33 at 7-9, but those guidelines only apply when a relator meets the threshold of actually qualifying for a share in the first place, and they counsel in favor of a reduced share in any event. Specifically, relator had little knowledge of the fraud; her knowledge was based primarily on public information; the Government already knew of the fraud; relator, or relator's counsel, did not provide any help after filing the complaint; and the case required a substantial effort by the Government to develop the facts.[17]

In sum, while the Government is sympathetic to relator's distress in finding out that she received a St. Jude device that was subject to the recall, the Act bars her case and she is not entitled to a share of the recovery here. Relator's complaint is entirely based on public disclosures in the *Minneapolis Star Tribune*, the FDA Recall Notice, the Duke Study, and other news media and Federal reports. Relator does not qualify as an original source. Her sole "independent" information is based on the implant of her own device, which does not materially add to the publicly disclosed information (and as a non-Medicare device, does not even qualify as an example of a false claim). Awarding a relator share under these circumstances would

16. The court granted the Government's motion to partially unseal the case on April 21, 2020.
17. If the court were to find that the relator were an original source, and that she should receive some award, then at most the court should only award a few thousand dollars for her time. (Relator's counsel has already been compensated for his fees by St. Jude as part of the Settlement Agreement. Ex. 3 at ¶ 2.) However, the relator is *only* entitled to any award if she has provided "material" and "independent" information and thus qualifies as an original source, and as discussed previously she does not meet either of these conditions.

mean that any end-user of a product at issue in an FCA case would qualify as an "original source," despite possessing no independent and material information that would aid the government. The Court should not indulge the relator's radical interpretation of this provision.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny relator's motion.

DATE: November 3, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIK L. BARRON
United States Attorney

/s/ Thomas F. Corcoran
Assistant United States Attorney
36 South Charles St., Suite 400
Baltimore, MD 21201
Ph: (410) 209-3834
Fx: (410) 962-2310

/s/ Jonathan H. Gold
Jonathan H. Gold (Bar No: 17897)
Trial Attorney
U.S. Department of Justice, Civil Division
175 N. St. NE, Rm. 9.109
Washington, D.C. 20002
Ph: (202) 353-7123
Jonathan.gold@usdoj.gov